UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE MICKELSON, an individual,

    Plaintiff,

v.

JANE HALEY, and individual, and
GOSIGER 3D, LLC, an Ohio limited
liability company,

    Defendants.
_____/

Case No. 08-14059

HONORABLE SEAN F. COX
United States District Judge

OPINION & ORDER

Plaintiff Dale Mickelson ("Mickelson") filed this breach of contract and business tort claim against Defendants Jane Haley ("Haley") and Gosiger 3D, LLC ("Gosiger 3D") in the Wayne County, Michigan, Circuit Court on August 27, 2007. The Defendants removed this action on diversity grounds on September 22, 2008 [Doc. No. 1]. The matter is currently before the Court on Haley's "Motion to Dismiss Her [Haley] as a Defendant" [Doc. No. 11] ("Motion"). Defendant Gosiger 3D is not a party to this motion. The parties have fully briefed the issues, and a hearing was held Thursday, April 30, 2009. For the reasons that follow, the Court **DENIES** Haley's Motion [Document No. 11].

BACKGROUND

Mickelson, a resident of Illinois, is considered an expert in the field of "hard milling and high speed machining." [Pl.'s Complaint, ¶5]. Mickelson began working for Okuma America Corporation ("Okuma") in 2003, programming difficult parts and helping with dealer open houses. *Id*. at ¶¶6-7.

In June of 2005, Eugene Hendricks ("Hendricks"), another employee of Okuma, approached Mickelson and asked him if he would work with an Okuma dealer, Gosiger, Inc. ("Gosiger"), to set up and run a tech center. *Id*. at ¶¶8-9. Mickelson agreed, and in September of 2005 Hendricks arranged for a meeting between Mickelson and Haley, the owner of Gosiger. *Id*. at ¶13. The meeting between Mickelson and Haley resulted in Haley forming a separate corporate entity, Gosiger 3D, for the specific purpose of setting up the proposed tech center. *Id*. at ¶¶16-17.

No formal written contract was entered into between the parties, but an oral agreement was entered into under which Mickelson would become an employee of Gosiger 3D. *Id*. at ¶¶19-21. Mickelson was to be in charge of Gosiger 3D's operations, being paid a base annual salary of $160,000, and the company would be allowed to use Mickelson's good name in the industry to assist in selling machinery. *Id*. at ¶21. Mickelson also claims that the parties did not intend to bind Mickelson with a non-compete clause. *Id*.

Mickelson began working for Gosiger 3D in October 2005, and was made President and a member of the company's board of directors in December 2005. *Id*. at ¶¶18, 21. Haley served as Gosiger 3D's CEO. *Id*. Mickelson traveled extensively in the pursuit of company business, resulting in numerous sales for Gosiger 3D. *Id*. at ¶25.

Typically, Mickelson would demonstrate products to potential customers, and then a sales representative for the distributor would draft a sales contract. These contracts would often omit material terms required by Okuma in order for Gosiger 3D to be paid. *Id*. at ¶27. As a result of this arrangement, Gosiger 3D would often, without Mickelson's knowledge, renegotiate the compensation terms with dealers like Okuma, substituting purchase price terms for discounts

on future sales. *Id*. at ¶28. This resulted in $600,000 in commission write-downs for Mickelson in the first year of Gosiger 3D's company business alone. *Id*. at ¶29. As a result of increases in company profitability, however, Mickelson received a raise in salary to $200,000. *Id*. at ¶31.

In April 2007, Brad Gecowets took over the operation of Gosiger 3D, under the allegation that Gosiger 3D was not profitable under Mickelson's control. *Id*. at ¶32. Mickelson alleges that Haley, in consultation with other employees at Gosiger 3D, then forced Mickelson to leave Gosiger 3D. *Id*. at ¶35.

Despite already terminating him, Mickelson contends that Haley and Gosiger 3D were concerned that Mickelson would continue working in their field and adversely affect Gosiger 3D's business. *Id*. at ¶36. To that end, Haley and Gosiger 3D are alleged to have "reneg[ed] on promises that the plaintiff had made to other distributors to help them with plan and design in order to adversely affect the reputation of Plaintiff." *Id*. at ¶38. Specifically, Mickelson alleges that the Defendants cancelled customer training seminars for machines that Mickelson had already sold, cancelled open house seminars after invitations had already been sent out in Mickelson's name, and cancelled scheduled test cuts. *Id*. at ¶39.

Mickelson's last day with Gosiger 3D was July 2, 2007. *Id*. at ¶45. On that same day, Haley and other Gosiger 3D representatives allegedly made telephone calls to various industry representatives and companies, including Sharon Medwid, the owner of Three M Tools, and:

> . . . began to disgrace and disparage Plaintiff's character by stating they had gotten rid of the Plaintiff because he could not follow the rule [*sic*] and Plaintiff thought he was too much of a rock star in the industry to follow the rules making him impossible to work with.

*Id*. at ¶46.

Mickelson contends that Haley and Gosiger 3D continued to disparage his reputation

after Mickelson left Gosiger 3D.  For instance, in September 2007, Mickelson was retained by Okuma to perform seminars at a five-day-conference.  *Id*. at ¶43.  Haley threatened to withdraw her company from the conference unless Okuma fired Mickelson and removed him from the conference, which led Okuma to fire Mickelson and ban him from future Okuma events.  *Id*. at ¶¶45-46.

Mickelson also alleges that other Okuma dealers had either hired, or had expressed an interest in hiring, Mickelson for similar services, but that these contracts were either suddenly rescinded, or communications ceased on prospective dealings, shortly after the September 2007 conference incident.  *Id*. at ¶49.  Presently, despite Mickelson being an expert in the industry, he has been unable to work with any such dealers.  *Id*. at 51.

Mickelson filed the instant action in the Wayne County, Michigan, Circuit Court on August 27, 2008, seeking to recover on three counts: 1) breach of contract; 2) tortious interference with business relationships; and 3) "corporate liability."  The Defendants removed the action, on diversity grounds, on September 22, 2008.

Haley filed the instant Motion to Dismiss [Doc. No. 11] on December 30, 2008, alleging that Counts I and II must be dismissed against her.  Mickelson has conceded that it was not his intention to bring a breach of contract claim against Haley [Pl.'s Br., Doc. No. 17, p.2]. Therefore, the Court **DISMISSES** Count I with respect to defendant Haley.

With respect to Count II, for tortious interference with business relationships, Haley argues that Mickelson's failure to allege acts not within the course and scope of her employment with Gosiger 3D requires her to be dismissed as a defendant on that cause of action. [Def.'s Br., p.4].

4

STANDARD OF REVIEW

In assessing a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). Dismissal is only proper if it, on the pleadings themselves, the plaintiff does not have a "reasonably founded hope" of making his or her case. *Bell Atlantic v. Twombley*, 550 U.S. 554, 127 S.Ct. 1955, 1970 (2007).

ANALYSIS

In Count II of his Complaint, Mickelson brings a cause of action against Haley for "Tortious Interference with Business Relationships." [Pl.'s Complaint, ¶¶ 54-59]. In her brief, Haley argues that "since plaintiff alleges that all of Ms. Haley's activities were on behalf of Gosiger 3D, Count II should be dismissed in its entirety." [Doc. No. 11, p.4]. As this argument is not supported under Michigan law regarding liability for torts committed within the scope of a corporate officer's employment, Haley's Motion is **DENIED**.

"It is well-established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation." *In re Interstate Agency*, 760 F.2d 121, 125 (6th Cir. 1985)(applying Michigan tort law); *see also Allen v. Morris Building Co.*, 360 Mich. 214, 218 (1960); *Moellers N.A., Inc. v. MSK Covertech, Inc.*, 912 F.Supp. 269, 271 (W.D. Mich. 1995). There are, of course, exceptions to this general rule. For example, "when an officer interferes with *a contract between his own employer* and a third party for the benefit of his corporation, be may not be found liable for tortious interference of contract or business expectancy." *Moellers* at 271 (emphasis added).

Haley argues, however, for the general proposition that corporate officers are not liable

for torts committed by them in their official capacities unless they can be shown to have acted outside the scope of their authority.  In support of this argument, Haley relies upon *Coleman-Nichols v. Tixon Corp.*, 203 Mich.App. 645, 657 (1994).  The relevant quote from *Coleman-Nichols* reads as follows in its entirety:

> Under a claim of tortious interference with an at-will employment contract, where the defendant is an officer of the employer, a plaintiff has the particularly heavy burden of proving that the officer was acting outside the scope of her authority.

*Coleman-Nichols*, 203 Mich.App. at 657.  Haley's citation of the above-quoted material, however, expands *Coleman-Nichols*'s application beyond that which the Michigan Court of Appeals provided for in that opinion.  Haley's verbatim quotation to *Coleman-Nichols* is as follows:

> ...While a plaintiff may proceed on a claim of tortious interference
>> where the defendant is an officer of the employer, a plaintiff has the particularly heavy burden of proving that the officer was acting outside the scope of her authority.

[Def.'s Br., Doc. No. 11, p.4].  In breaking the *Coleman-Nichols* quotation up, Haley has omitted the very six words which foreclose *Coleman-Nichols*'s application to the instant case: ". . .with an at-will employment contract. . . ."  Like *Moellers*, quoted *supra*, *Coleman-Nichols* announces another limited exception to the general rule of individual tort liability for corporate officers.  However, the exception announced in *Coleman-Nichols* has no bearing on the instant case.

Mickelson does not bring Count II as a "tortious interference with at-will employment contract" cause of action.  A review of Mickelson's Complaint reveals that this claim, both by its captioned title and its plain language, is for interference with business relationships Mickelson personally had with third-parties in the industry:

> That the defendants did wrongfully and tortiously interfere with the business relationship, contractual relationships and good will that the Plaintiff had with various dealers of Okuma, Hartwig, and Morris, and others in the industry nationwide and his future expectation of business predicated upon his expertise in the industry and contacts that had been successfully established over many years.

[Pl.'s Complaint, ¶55].

Given Haley's failure to bring forth relevant authority disclaiming her potential for liability in this particular tort action, the Court **DENIES** her motion.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Haley's "Motion to Dismiss Her [Haley] as a Defendant" [Doc. No. 11].

**IT IS SO ORDERED**.

                                              s/ Sean F. Cox
                                              SEAN F. COX
Dated: May 27, 2009                     United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 27, 2009, by electronic and/or ordinary mail.

                                              S/Timilyn M. Katsaros
                                              Administrative Assistant